IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

WILLIAM BAKER PLAINTIFF

V. Case No. 4:25-CV-00436-JM-BBM

FRANK BISIGNANO,[1] Commissioner,
Social Security Administration DEFENDANT

**RECOMMENDED DISPOSITION**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. Either party may file written objections to this Recommendation. Those objections should be specific and should include the factual and/or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. INTRODUCTION

William Baker applied for Title II disability insurance benefits on August 9, 2023, alleging disability beginning April 15, 2021. (Tr. at 150). His claim was denied both initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 78, 91, 95). Following a telephone hearing, (Tr. at 11), the ALJ concluded that Baker was not disabled. (Tr. at 14–25). The Appeals Council denied review

[1] On May 7, 2025, Frank Bisignano was sworn in as Commissioner of the Social Security Administration, and pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as the Defendant.

on March 13, 2025. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Baker requests judicial review. For the reasons set forth below, the Court recommends that the decision of the Commissioner be affirmed.

## II. THE COMMISSIONER'S DECISION

At step one of the sequential five-step analysis,[2] the ALJ determined that Baker had not engaged in substantial gainful activity since April 15, 2021. (Tr. at 16). At step two, the ALJ decided that Baker had the following severe impairments: post-traumatic stress disorder; depressive disorder; anxiety disorder; substance abuse disorder; degenerative disc disease of the cervical spine; degenerative joint disease of the right knee; chronic obstructive pulmonary disease; and migraine headaches. *Id*. After finding at step three that none of Baker's impairments or combination of impairments met or medically equaled a listed impairment, the ALJ determined that Baker had the residual functional capacity ("RFC") to perform light work with the following functional limitations: (1) occasional climbing, balancing, stooping, kneeling, crouching, and crawling; (2) frequent use of his upper extremities to reach, handle, finger, and feel; (3) occasional exposure to atmospheric conditions (such as fumes, noxious odors, dusts, mists, gases, and poor ventilation); (4) no exposure to hazards, such as unprotected heights or dangerous, moving machinery; and (5) no work in loud or very loud noise environments. (Tr. at 19).

---

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)–(g).

As for non-exertional limitations, the ALJ determined that Baker could understand, remember, and carry out simple instructions; could have occasional interaction with the public; and could perform tasks that did not involve a specific production rate pace (such as assembly-line work). (Tr. at 19). At step four, the ALJ found that Baker was unable to perform his past relevant work but that he could perform jobs that exist in significant numbers in the national economy, including marker, mail clerk, and router. (Tr. at 23–24). Consequently, the ALJ concluded that Baker was not disabled. (Tr. at 107).

## III. DISCUSSION

### A. Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

**B. Baker's Arguments on Appeal**

Baker asserts that the ALJ erred by: (1) not performing a function-by-function assessment as required by Social Security Regulation ("SSR") 96-8p; (2) failing to account for Baker's severe mental impairments in the RFC; (3) not explaining the supportability and consistency of the medical opinions of Dr. Gem Moore and Christopher Jordan, APRN; and (4) neglecting to consider Baker's subjective complaints in assessing the RFC. (Doc. 11 at 6). For the reasons stated below, the Commissioner's decision should be affirmed.

**1. The ALJ properly assessed the evidence of record to determine Baker's RFC.**

Baker first argues that the ALJ erred by "jumping directly to a 'light work' classification without first performing the required function-by-function assessment of the Plaintiff's work-related abilities." (Doc. 11 at 8). Baker points to SSR 96-8p as establishing a "mandatory" two-step process for determining a claimant's RFC that includes a function-by-function assessment. *Id*. Baker claims that the ALJ failed to make specific findings showing that Baker could perform light work. *Id*.

The court is required to "review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [the ALJ is] not require[d] to mechanically list and reject every possible limitation." *Nash v. Commissioner, Soc. Sec. Admin.*, 907 F.3d 1086, 1090–91 (8th Cir. 2018) (quoting *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011)). The *Nash* Court rejected the exact argument Baker submits on appeal—that SSR 96-8p requires a more rigorous assessment. *Id*. at 1090 (noting that the claimant argued "the ALJ did not comply with Social Security Ruling 96-8p, which requires assessing Nash's RFC on a 'function-by-function' basis").

Here, the ALJ considered all of Baker's limitations (severe and non-severe), discussed the relevant medical evidence in the record (including a comprehensive review of Baker's medical records and the proffered medical opinions), and provided citations to the record in support his determination that Baker could perform light work with certain functional and mental limitations, (Tr. at 21). (Tr. at 14–25). The ALJ's opinion is detailed, thorough, and supported by the record. *Id*. Because the ALJ discussed how the evidence in the record supports the RFC, this Court is satisfied that the ALJ did not err. *Smith-Jones v. Soc. Sec. Admin., Comm.*, 4:25-CV-00304-LPR-ERE, 2025 WL 3269524, *2 (Nov. 24, 2025) ("As long as the ALJ discussed how the evidence in the record supports his RFC conclusion, he has met the requirements for establishing an RFC.") (citation omitted), *adopted by* 2026 WL 637625 (Mar. 6, 2026).

**2. The ALJ properly considered Baker's mental limitations in determining the RFC.**

Baker next argues that the ALJ erred by failing to assign sufficient mental limitations in the RFC to account for Baker's severe mental impairments. (Doc. 11 at 10). Baker maintains that the ALJ's assessment of Baker's mental limitations at step two and step three—finding the severe mental impairments of posttraumatic stress disorder, depressive disorder, anxiety disorder, and substance abuse disorder moderately affected Baker's ability to concentrate, persist, or maintain pace; to interact with others; and to adapt and manage himself—is inconsistent with the ALJ's RFC determination. *Id*. Baker also suggests that the ALJ should have included additional limitations based on evidence in the record. *Id*. at 10–12. Specifically, Baker claims that the ALJ should have included a limitation allowing Baker time off task, on break, or absent based on the medical opinion of the consultative examiner, Baker's documented hospitalization for hallucinations, and his testimony that he experienced daily suicidal ideation.[3] *Id*.

An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 404.1545(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ,

[3] Because, in his last point, Baker argues that the ALJ should have given credit to Baker's subjective complaints in assessing the RFC, this Court will defer discussion of that issue until the final section of this Recommendation.

not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). In determining a claimant's RFC, "the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect [the] RFC." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

In *Chismarich v. Berryhill*, the Eighth Circuit examined the relationship between the ALJ's step-three analysis and the later RFC determination, stating: "the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." 888 F.3d 978, 980 (8th Cir. 2018) ("Each step in the disability determination entails a separate analysis and legal standard.") (citing *Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006)). The *Chismarich* Court considered whether an ALJ erred by not including more specific limitations in his RFC determination after finding moderate limitations in three areas of mental functioning, including limitations in concentration, persistence, or pace. 888 F.3d at 980. It concluded that there was "nothing inconsistent with the ALJ's separate analyses at the different steps" and that the "[m]oderate difficulties in the areas noted" were consistent with the RFC, which included performing work at a normal pace without production quotas. *Id*.

Similarly, there is no inconsistency here in the ALJ's assignment of moderate limitations in certain areas of mental functioning and the RFC that included related non-exertional limitations. For instance, the ALJ found that Baker has moderate limitations in concentrating, persisting, or maintaining pace; interacting with others; and adapting and

managing himself. (Tr. at 18). The ALJ then determined that Baker has the RFC to perform light work with the following non-exertional limitations: he can understand, remember, and carry out simple instructions; he can have occasional interaction with the public; and he can perform tasks that do not involve a specific production rate pace. (Tr. at 19). The RFC includes limitations related to each area of mental functioning the ALJ found moderately limited. For example, Baker's moderate limitation in concentrating, persisting, or maintaining pace is reflected in the RFC limitation to understanding, remembering, and carrying out simple instructions and to performing tasks not requiring a specific production pace, such as assembly-line work. *Id.* His moderate limitation in interacting with others is reflected in the RFC limitation of only occasional interaction with the public. *Id.* Lastly, Baker's moderate limitation in adapting and managing himself correlates to all three limitations. *Id*. Simply put, the Court finds no inconsistency between the ALJ's step three findings and the RFC.

As for the additional limitations Baker claims the ALJ should have included (all related to additional time needed for breaks and absences), "[w]hether the ALJ should have provided *additional* limitations amounts to a disagreement over the weighing of evidence within the record, and 'it is not this Court's role to reweigh that evidence.'" *Austin v. Kijakazi*, 52 F.4th 723, 731 (8th Cir. 2022) (quoting *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022)). In this case, however, the ALJ provided good reasons for dismissing the evidence Baker identifies as supporting his suggested additional limitations. *See Igo v. Colvin*, 839 F.3d 724, 730 (8th Cir. 2016) (affirming where ALJ gave good reasons for discounting claimant's pain-related limitations).

First, Baker points to Dr. Gem Moore's March 2023 consultative examination, noting Baker had concentration and focus deficits, as well as "a poor ability to complete work like tasks within an acceptable time frame." (Doc. 11 at 11). But an ALJ is not required to include limitations from a medical opinion it finds inconsistent with the record. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (citing *Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995)). Here, the ALJ found Dr. Moore's medical opinion unpersuasive[4] because it was "not consistent with the longitudinal evidence noting the claimant as alert, oriented, cooperative, and pleasant with a normal mood, affect, memory concentration, insight, and judgment" and was inconsistent with Baker's activities of daily living. (Tr. at 22).

Second, Baker contends that the ALJ "downplays" and "cherry picks" hospitalization records from September 2023 wherein it's reported that Baker was experiencing hallucinations. (Doc. 11 at 11–12). Although Baker argues that his hospitalization was serious enough to require intubation and mechanical ventilation, (Doc. 11 at 11), a review of the record reveals that, prior to driving himself to the emergency room, Baker had "not slept in 4-5 days," had become "more agitated and confused," and had "destroyed the home and dove into the bath tub." (Tr. at 1390). Hospital staff sedated and intubated him after he became "more and more combative and agitated refractory to different medications that were given to him."[5] (Tr. at 1403). The ALJ addressed this

---

[4] The Court will review the ALJ's persuasiveness determination in the next section.

[5] A month earlier, Baker had driven himself to the hospital after "taking an unknown amount of Wellbutrin 'to see if they would get me high.'" (Tr. at 1397). He reported that he was hallucinating and had an altered mental state after the overdose. *Id*.

incident, noting that Baker drove himself to the hospital, was initially alert and oriented, but became more combative and agitated. (Tr. at 21). The ALJ acknowledged that Baker reported hallucinations, but the ALJ also indicated that Baker was discharged in stable condition. *Id*. Under these circumstances, the ALJ's reasons for discounting Baker's hallucinations are supported by substantial evidence.

In sum, the ALJ properly considered Baker's mental limitations in assessing his RFC.

**3. The ALJ properly evaluated the medical opinions of Dr. Gem Moore and Nurse Practitioner Christopher Jordan.**

In his next two points, Baker argues that the ALJ failed to explain the supportability and consistency of the medical opinions of Dr. Gem Moore and Nurse Practitioner Christopher Jordan. (Doc. 11 at 12–18). Specifically, Baker contends that the ALJ failed to articulate why he rejected: (1) Dr. Moore's opinion that Baker had limitations in concentration and task completion and (2) Nurse Practitioner Jordan's opinion that Baker had severe limitations in fingering due to a loss of sensation in his fingertips. *Id*. at 14, 16. Baker claims that the ALJ used "only conclusory language" without explaining in detail why he found the opinions unpersuasive (Dr. Moore) or only partially persuasive (Jordan). (Tr. at 13, 16).

On January 28, 2017, the Social Security Administration promulgated new regulations governing how ALJs assess medical opinion evidence. These rules provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s)." *See* 20 C.F.R. § 416.920c(a)–(c) (2017). Instead, ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. § 416.920c(c). An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and it is consistent with other evidence in record." *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, at *1 (8th Cir. May 31, 2022) (unpublished per curiam) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020) (first citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017); then citing Articulation Requirements for Medical Opinions and Prior Administrative Medical Findings – Claims filed on or after March 27, 2017, SSA POMS DI 24503.030).

Under the revised regulations, the Court reviews whether the ALJ analyzed adequately persuasiveness, including the supportability and consistency factors, not whether it agrees with the ALJ's evaluation of persuasiveness. *Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025) (citing *Austin*, 52 F.4th at 728–30; *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022)). The Court does not reweigh the evidence of record on the supportability and consistency factors, but "uphold[s] the ALJ's finding that a medical

opinion is not persuasive unless that finding 'falls outside the available zone of choice.'" *See Cropper*, 136 F.4th at 814 (citing *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024)). A decision is not outside of the zone of choice because the court might have reached a different conclusion if it were the initial factfinder. *Ross*, 92 F.4th at 778 (citing *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021)).

**a. Dr. Moore**

As noted earlier, Dr. Moore performed a mental evaluation of Baker in March 2023. (Tr. at 258). Baker's wife of eight months had just moved out *that morning*. (Tr. at 258). Dr. Moore described Baker as: (1) so distressed that he would cry; (2) very upset during the interview; (3) not able to focus for any period of time; (4) under a lot of stress due to his wife leaving and unable to focus on the task at hand; and (5) having a poor ability to complete work-like tasks within an acceptable time frame. (Tr. at 261). In evaluating Dr. Moore's opinion, the ALJ found:

> The opinion of Dr. Moore is not persuasive (1F). This opinion has some support the consultants examination during which the claimant starting crying and was distraught (1F). However, this opinion is not consistent with the longitudinal evidence noting the claimant as alert, oriented, cooperative, and pleasant with normal mood, affect, memory concentration, insight, and judgment (3F; 5F; 11F; 10F; 7F; 8F). It is also highly inconsistent with claimant's activity level noted earlier.

(Tr. at 22).

The Court is satisfied that the ALJ adequately addressed both the supportability and consistency of Dr. Moore's opinion. While the ALJ noted that Dr. Moore's opinion was supported by Baker's distressed presentation at the examination, the ALJ found Baker's presentation to Dr. Moore inconsistent with multiple instances in the record where he was

alert, oriented, cooperative, and pleasant with a normal mood. (Tr. at 22, 286, 309, 330, 363, 413, 1031, 1034, 1088, 1090–91, 1098, 1367, 1437, 1728, 1863–64, 1885–86). The ALJ also determined that Dr. Moore's opinion was inconsistent with Baker's stated activity level, which included that he could: socialize with others, get along well with authority figures, manage money, perform household chores, prepare simple meals, follow spoken and written instructions well, use a computer, shop in stores, go to the gym to workout, meditate, play video games, and watch television. (Tr. at 18–19, 22).

Although Baker maintains that the ALJ's evaluation of Dr. Moore's medical opinion is "inadequate" and "does not address . . . specific findings about concentration and task completion," (Tr. at 13), the ALJ provided good reasons for finding Dr. Moore's opinion supported by Baker's presentation but inconsistent with other evidence in the record. Moreover, the ALJ's decision to exclude Dr. Moore's opinion—which took place when Baker was *especially distraught due to martial discord*—was within the zone of choice. To the extent Baker asks this Court to reweigh the longitudinal evidence and conclude opposite the ALJ, this Court declines to do so.

**b. Nurse Practitioner Jordan**

Nurse Practitioner Jordan saw Baker on April 27, 2023. (Tr. 262). Jordan noted a decreased range of motion in bilateral shoulders, 4/5 muscle strength in the upper extremities, decreased sensation in bilateral hands, normal grip strength bilaterally, and tender muscles in the cervical, thoracic, and lumbar paraspinal muscles. (Tr. at 265). Baker could hold a pen and write, touch fingertips to palm, oppose thumb to fingers, and pick up

a coin. (Tr. at 266). However, Jordan noted that Baker had difficulty picking up the coin "due to decreased sensation in his fingertips." *Id*. Jordan concluded that:

> The claimant has a moderate limitation to lift, carry, handle objects. There is a noted cervical radiculopathy in his bilateral hands with associated decreased sensation and decreased grip strength that causes him to not be able to grasp objects firmly. There is pain and a decreased ROM in his shoulders.
>
> There is a *severe limitation* in his ability to use his fingers. There is a C6-7-8 radiculopathy that significantly affects his feeling in his fingers bilaterally. His fingertips have decreased sensation. During the exam he was able to pick up a coin, but this was difficult as he had decreased sensation that affected his attempts.

*Id*. at 267–68 (emphasis added). The ALJ evaluated Jordan's opinion and found:

> The opinion of Dr. Jordan is partially persuasive (2F). This opinion is supported by Dr. Jordan's examination noting clear lung sounds, 4/5 and 5/5 strength, and decreased range of motion (2F). This opinion is also generally consistent with the longitudinal evidence noting the claimant in no acute distress with normal gait, strength, range of motion and neurological and respiratory functioning (8F; 3F; 11F; 15F; 10F; 3F; 2F). However, the provider stated "mild to moderate" limitations, which are vague and not vocationally relevant terms. Thus, this opinion is only partially persuasive. It is also inconsistent with treating orthopedic exams indicating that claimant had 5/5 upper extremity strength. (13F).

(Tr. at 22).

Although the ALJ articulated what evidence supported Jordan's opinion—his own examination findings—and what evidence was inconsistent—examinations showing Baker had full upper extremity strength, Baker maintains that the ALJ did not go far enough in explaining supportability and consistency. (Doc. 11 at 16–18). Baker points to other evidence in the record—specifically, orthopedic examinations, MRIs done in 2023 and 2024, and a March 2024 EMG/NCV—and contends that the ALJ "failed to explain which specific findings are supported and which are not." *Id*. at 17.

An ALJ is not required to discuss each medical opinion in exhaustive detail. *See Austin*, 52 F.4th at 729 (holding ALJs are neither required to "reconcile every conflicting shred of medical evidence" nor "articulate how [they] considered each medical opinion from one medical source individually") (cleaned up, citations omitted). Here, the ALJ did not outright reject Jordan's opinion. Rather, the ALJ found Jordan's opinion partially persuasive and accounted for Baker's decreased fingertip sensation[6] in the RFC by limiting him to frequent, not constant, use of upper extremities to reach, handle, finger, and feel. (Tr. at 19). The ALJ gave sound reasons for partially crediting Jordan's opinion—a reduction in upper extremity strength and decreased range of motion, and he gave sufficient reasons for partially discrediting it—it was inconsistent with other orthopedic examinations and lacked specificity regarding functional limitations. While the ALJ certainly could have said more, he considered the required factors and said enough. Because the ALJ explained sufficiently the persuasiveness of Nurse Practitioner Jordan's medical opinion, Baker's argument on this point is without merit.

**4. Substantial evidence supports the finding that Baker's subjective complaints were not entirely consistent with the record.**

In his last argument, Baker asserts that the ALJ erred in establishing an RFC that contradicts Baker's own testimony of his functional limitations and fails to include any limitations for Baker's migraines or daily suicidal ideation. (Doc. 11 at 18–19). As support,

[6] While Baker had difficulty picking up a coin, he was able to hold a pen and write, touch fingertips to palm, and oppose thumb to fingers during the examination. (Tr. at 266).

Baker points to his testimony that he: (1) experiences weekly migraines that cause near-constant vomiting; (2) has daily suicidal ideation; and (3) can only sit, stand, or walk for ten to fifteen minutes and can only lift three to five pounds.[7] (Doc. 11 at 18).

"When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citations omitted). "But an ALJ need not explicitly discuss each factor," and he "may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id.* (cleaned up); *see also Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011) (holding that an ALJ is not required to adopt a claimant's unsupported subjective complaints and self-imposed limitations).

Here, the ALJ found that Baker's "statements concerning the intensity, persistence[,] and limiting effects of [his] symptoms are not entirely consistent with the overall record." (Tr. at 21). The ALJ noted that Baker "routinely presented in no acute

[7] Baker also claims that, based on the medical opinion of Nurse Practitioner Jordan that Baker has severe limitations in using his fingers, the ALJ should have included additional limitations on fingering and handling. (Doc. 11 at 20). However, because this Court previously reviewed the ALJ's finding that Jordan's opinion was partially persuasive and found no error, *see infra* pp. 10–15, there is no merit to Baker's argument that the ALJ should have included additional functional limitations in the RFC based on Jordan's opinion. *See McKinney v. O'Malley*, No. 23-3220, 2024 WL 1327965, at *1 (8th Cir. Mar. 28, 2024) (an ALJ is not required to adopt the exact limitations outlined in medical opinions the ALJ found partially persuasive). Notwithstanding, the ALJ did include a limitation on Baker's ability to reach, handle, finger, and feel—finding him limited to frequent, not constant, use. (Tr. at 19).

distress," "denied headaches," and presented with "normal gait and station" at medical appointments. *Id*. Baker's mental-health evaluations included conservative treatment and normal findings. *Id*. Although Baker alleged weakness, limited range of motion, numbness, and tingling, "physical examinations generally describe normal motor strength[,] . . . intact sensation and neurological functioning[,] . . . [and] normal range of motion." *Id*.

After careful review of the record, this Court concludes that substantial evidence supports the ALJ's finding that Baker's subjective complaints are inconsistent with the record. In fact, the record is replete with normal mental and physical examination findings, including multiple instances where Baker stated he had no desire to harm himself, contradicting his claims of total disability. (Tr. at 285–86, 307–09, 328–30, 363–64, 411–13, 1005–06, 1031, 1034, 1086–91, 1098–99, 1362–68, 1422–23, 1578–79, 1597–98, 1693–94, 1727–28, 1859–60, 1863–64, 1884–87, 1953–54, 2062, 2215–18, 2301–04).

Baker's reported activities of daily living, wherein he stated he enjoys playing video games, going for walks, going to the gym, and watching television, are also inconsistent with his report of constant pain and limited functional ability. (Tr. at 20, 187–94, 207–14, 320–21, 363, 465–66). As noted by the ALJ, Baker's mental-health treatment was conservative,[8] and a conservative course of treatment can constitute substantial evidence supporting a less limiting RFC. *See Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (finding that "evidence showed a lack of consistent ongoing treatment and a lack of consistent complaints and objective symptoms" so that "even if some evidence may

---

[8] Baker "quit taking antidepressants because medical marijuana was working well." (Tr. at 22).

support [the] claimed RFC, the ALJ adequately articulated his reasons for not fully crediting [the] subjective complains of pain and limitation”).

Baker has not identified any evidence in the record that the ALJ neglected to consider regarding Baker’s migraines, suicidal ideation, or functional abilities. Rather, Baker’s argument is that the ALJ erred in rejecting Baker’s own testimony regarding his disabling condition. Because this Court is convinced that there is ample evidence in the record “that a reasonable mind might accept as adequate to support [the] conclusion” of the ALJ, *Biestek*, 587 U.S. at 103 (citation omitted), the Court finds Baker’s argument unpersuasive.

## IV. CONCLUSION

Substantial evidence supports the Commissioner’s decision that Baker was not disabled.

IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner’s decision be AFFIRMED.

2. Judgment be entered for the Defendant.

DATED this 29th day of July, 2026.

UNITED STATES MAGISTRATE JUDGE